GEORGE B. LINCOLN et ux., appellees, v. GENERAL CASUALTY COMPANY OF WISCONSIN, appellant.

No. 48115.

(Reported in 55 N.W.2d 321)

October 14, 1952.

1282

Haupert & Robertson, of Marshalltown, for appellant.

Henry R. Phillips, of Marshalltown, and Lundy, Butler & Lundy, of Eldora, for appellees.

THOMPSON, J.—The plaintiffs, who are husband and wife, purchased a new Nash automobile about June 1, 1950. They procured from defendant-company an insurance policy which indemnified them from damage to the car by collision. The policy had what is described as the "standard" $50 deductible clause.

Disaster speedily overtook the new automobile. While being driven by plaintiffs' daughter near Norton, Kansas, on June 17, 1950, it left the highway and was considerably damaged. The plaintiffs promptly notified the agents of the defendant, although they did not file formal proof of loss as required by the terms of the policy. While the defendant pleaded a breach of the policy through failure to follow this provision, plaintiffs alleged a waiver, which seems to us amply sustained by the proof. In any event, this issue was submitted to the jury which must have found against defendant thereupon. No error is predicated at this point and no further discussion is required.

It was at first arranged that an automobile repair concern in Norton would put the car in shape, and this seems to have been agreed upon by both parties. However, the evidence shows that after several weeks plaintiffs were notified by the Norton firm that they could not have the automobile repaired until sometime in September. Accordingly, with the consent of defendant, plaintiffs had it returned to Marshalltown where they resided. Various negotiations looking to a settlement of plaintiffs' claim were had, but no adjustment was ever reached. There is a con-

flict in the evidence as to what occurred, but of course we must follow the familiar rule that if there was substantial evidence to support the verdict of the jury we are bound by it. At one time, in July, the car was taken to a repair shop in Des Moines; as plaintiffs say, in order that the defendant could find out what it would cost to repair it there. Being dissatisfied with this arrangement plaintiffs had the car returned to Marshalltown. Following this an attempt was made to set up an arbitration board, or committee, to determine the amount which plaintiffs were entitled to receive in settlement of their claim. There was a provision in the policy for this manner of adjustment, and a return was in fact made by two of the three arbitrators which showed plaintiffs' damage to be $1665.49 as the cost of repairs. Shortly thereafter, defendant says, it offered to pay this amount to plaintiffs but they asked additional sums for other expenses to which they considered themselves entitled, and no settlement was reached. On October 28, 1950, plaintiffs filed this suit. In November 1950 they sold the unrepaired and damaged car for $525.

Plaintiffs' action, with amendments, was originally in three counts. The first count alleged the arbitration allowance, plus storage and towing charges, and asked judgment in the sum of $1854.49. The second count alleged the car could not be put in as good condition as it was before the accident, and prayed judgment for the sum of $2300 as the difference in the reasonable value before and after the collision. Count III, as amended, claimed for the reasonable cost and value of repairs necessary to put the car in as good condition as it was before the collision in the sum of $2302.70. At the close of plaintiffs' evidence, upon motion of the defendant, the trial court struck Count II; and at the close of all the evidence, likewise upon defendant's motion, it struck Count I. It denied a motion for directed verdict as to Count III and submitted the issues thereby raised to the jury which returned a verdict for plaintiffs in the sum of $1500. It is from judgment on this verdict that the present appeal is taken.

I. Defendant's assignments of error are two. The first is that the court was in error in denying its motion for a directed verdict (a) upon the third ground thereof and (b) upon the fourth ground thereof.

■ The first assignment, Division I(a), is based upon the third paragraph of the motion to direct, which says that plaintiffs breached their contract by selling the automobile without notice to or the consent of the defendant. This thought is based upon section 13 of the policy of insurance which provides the company may pay the loss in money, or may repair or replace the automobile or the damaged parts, or may take the automobile at the agreed or appraised value. Defendant says that by selling the car plaintiffs deprived them of the rights given them by the policy to repair it, or to take it at its cash value and pay for it. These options gave the insurance company substantial rights. Cocklin v. Home Mutual Ins. Assn., 207 Iowa 4, 222 N.W. 368; Home Mutual Ins. Co. v. Stewart, 105 Colo. 516, 100 P.2d 159; 46 C. J. S., Insurance, section 1195, page 130; 29 Am. Jur., Insurance, sections 1267, 1268; Dosland v. Preferred Risk Mutual Ins. Co., 242 Iowa 1220, 1226, 1227, 1228, 49 N.W.2d 823.

But they must be exercised within the time provided in the policy; or where, as here, no definite time is specified, within a reasonable time. Dosland v. Preferred Risk Mutual Ins. Co., supra, and cases cited. We find this apt language in 29 Am. Jur., Insurance, section 1267, page 945:

"Where no time is fixed by the policy for the exercise by the insurer of its option, it must give notice thereof within a reasonable time, and if it does not make its election in apt time, and give the insured notice, the right to rebuild or repair does not exist. If the election to replace or repair the property is not made within the period fixed by the express terms of the policy, and notice given, the right of action becomes complete in the insured, and no subsequent election on the part of the company, not assented to by the insured, will divest that right of action."

The insurer must evidence its election of the option by some unequivocal act. 46 C. J. S., Insurance, section 1195, page 131. The notice of election must be "clear, positive, distinct and unambiguous." Dosland v. Preferred Risk Mutual Ins. Co., supra, at page 1227; Home Mutual Ins. Co. v. Stewart, supra.

■ Defendant's difficulty at this point lies in the fact that

it did not exercise either of the options of which it now says it was deprived by the sale of the car by any definite, unequivocal act or notice to its insureds, nor within a reasonable time. The damage occurred on June 17, 1950, and the automobile was not sold by plaintiffs until the following November. Surely they were not required to wait interminably for their insurer to make up its mind as to which of the three ways specified in the policy it would elect to follow.

It is true that it was first agreed the car would be repaired in Kansas. But this agreement was terminated by mutual consent when it was discovered the work would not be completed there for almost three months after the accident. The car was returned to Marshalltown, and then taken to Des Moines; as plaintiff George B. Lincoln says, to secure an estimate; as defendant says, to be repaired. It was returned to Marshalltown upon the order of Mr. Lincoln. But we do not find that defendant's election to repair is shown by the kind and quality of proof designated in the Dosland case, supra. Defendant apparently abandoned this option, if it had ever definitely and unequivocally adopted it, and began negotiations looking to a money settlement. It was not entitled to more than a reasonable time to elect, and there is no proof it did so, within the rules of law set forth above, so definitely as to require a verdict by direction of the court. At the best, there was a jury question on the issue of whether defendant had made any election within a reasonable time. It is true that the jury was not instructed on this point, but no exception was taken to the court's failure so to do.

II. Defendant's assigned errors, Division I(b), and Division II are so nearly identical that we shall discuss them together. In Division I(b) complaint is made that the fourth ground of the motion for directed verdict should have been, and was not, sustained. This ground alleged failure to prove the fair reasonable cost of repairs, and that the fair reasonable cost of repairs exceeded the value of the automobile at the time of the collision. Division II predicates error upon failure to sustain defendant's objection to Instruction No. 6, the instruction relating to and defining the measure of plaintiffs' damages in case the verdict was in their favor. Defendant says, in argu-

ment, that the objection was "for the reason that plaintiffs had failed to show the fair reasonable cost of the repair to the auto and further that the plaintiffs' proof showed total destruction of the auto."

The contention that the proof showed total destruction of the automobile can be shortly disposed of. Count II of plaintiffs' petition claimed total destruction and asked recovery therefor. At the close of plaintiffs' case defendant moved to strike Count II "for the reason it has been affirmatively shown by the testimony that said automobile could be repaired and placed in substantially the same condition it was prior to the accident. * * * There is no testimony in the record showing that the car has been or is a total loss." This motion was granted by the trial court. Defendant cannot now mend its hold and assert that "the proof shows total destruction of the auto." It will not be permitted to blow hot and cold as expediency dictates.

■ The rule laid down in Instruction No. 6 substantially follows the second rule approved in Langham v. Chicago, R. I. & P. R. Co., 201 Iowa 897, 901, 208 N.W. 356, 358; Kohl v. Arp, 236 Iowa 31, 33, 17 N.W.2d 824, 826, 169 A. L. R. 1067, and annotation 1100, 1107 et seq.; Fischer v. Hawkeye Stages, 240 Iowa 1203, 1212, 37 N.W.2d 284, and other cases. It told the jury that if it found for plaintiffs the measure of their damages would be "the fair and reasonable cost of the labor and materials necessary to repair said car and put it in as good condition as it was before the accident in so far as established by a preponderance of the evidence, less the sum of $50.00 deductible.

"In no event can the amount of plaintiffs' damages exceed the actual value of the automobile just prior to the accident."

■ Defendant concedes that the rule is correctly stated as to instances in which the automobile can be repaired and placed in as good condition as it was immediately prior to the injury. But it is argued that since the pleadings claimed damage as necessary repairs in the sum of $2352.70, and one of the plaintiffs said the value of the car just prior to the injury was $200 less than its cost price of $2577.19, or $2377.19, the court should have taken judicial notice that it was in effect totally destroyed.

The authorities cited do not so hold. It is only necessary that the amount allowed should not exceed the value, as the many-times approved instruction says. Nor does the evidence show without dispute what defendant alleges. There is other testimony placing a higher value on the car. And as pointed out above, defendant has foreclosed itself from urging the claim of total loss.

There were several witnesses who testified as to the cost of repairs, placing it in widely differing amounts. It is true that they did not say "reasonable" cost, or use the words "reasonable value." But this point is not argued by defendant, and in any event we should not be inclined to base a reversal upon so technical a distinction. The record sufficiently shows the witnesses were basing their opinions upon the actual, market, or reasonable cost of the repairs.

█ It is further urged that by submitting the amount asked in Count III—$2302.70—since the evidence showed a sale of the car for $525, the plaintiffs were permitted, if the jury had returned a verdict for the full amount submitted, to make substantial profit; in other words, to realize $2827.70, which exceeded the original cost of the car by some hundreds of dollars. However, this did not occur, nor would it have been reversible error if it had. We said in Fischer v. Hawkeye Stages, supra, that the courts might take judicial notice that in 1946 cars were selling at very high prices. In this case, the dealer who sold the car testified the demand was still heavy in 1950. It is quite possible the owner of a car might, by shrewd dealing or good fortune, or because of the state of the market at any particular time, be able to sell a repaired car for more than it cost new. This does not change the rule, which was properly given to the jury. Nor was the jury misled, as its verdict for $1500 as the amount necessary to repair shows. It was less than the so-called "arbitrated" price, which defendant contends it offered to pay prior to the commencement of this action.

█ Further, defendant says there was no evidence of the value of the automobile immediately before the collision, and so the court erred in telling the jury the cost of repairs must not exceed its worth at that time. Here again defendant is on

inconsistent ground. At one point, in urging the evidence shows total loss as we have pointed out above, its argument is that the testimony of George B. Lincoln was that the value just before the accident was $2377.70. It is true there was such evidence, as well as testimony from the other plaintiff, Claire A. Lincoln, and from Don Burger, the Nash dealer who sold the car. The court did not in his instructions set out value before the accident, perhaps because the witnesses varied in their estimates, but he did tell the jury they could not go beyond such value in their allowance of necessary repair costs.

We find no reversible error.—Affirmed.

All JUSTICES concur.