### CARTER *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

1. Insurance—Automobiles—Damages.

> The liability of an automobile insurer must be determined in accordance with the contract of insurance and damages for failure to observe the obligation thereby imposed must be measured accordingly.

2. Same—Automobiles—Measure of Liability.

> The measure of liability of an insurer under collision provisions of automobile insurance policy is the fair and reasonable cost of the labor and materials necessary to repair the car and put it in as good condition as it was before the accident insofar as established by a preponderance of the evidence, less depreciation and the deductible amount set forth in the policy, such liability being limited by the actual value of the automobile just prior to the accident.

3. Contracts—Defective Performance—Measure of Damages.

> The measure of damages for defective work done under a written contract is the cost of such replacement as is necessary to make the work as good as was contemplated by the original contract and specifications.

---

References for Points in Headnotes

[1, 2] 5A Am Jur, Automobile Insurance § 161.
[2, 4] 5A Am Jur, Automobile Insurance § 162.
[2, 7] Measure of recovery by insured under automobile collision insurance policy.  43 ALR2d 327.
[4] 5 Am Jur, Automobiles and Highway Traffic § 1115.
[5] 15 Am Jur, Damages § 192 *et seq.*
[6] 15 Am Jur, Damages § 331.

4. INSURANCE—AUTOMOBILES—LOSS OF USE—REPAIRS—TIME—EVIDENCE.

Proof of time reasonably necessary for making repairs to injured automobile must be made in order to entitle one to an award from the insurer thereof for loss of use of the car during the period of repair.

5. CONTRACTS—BREACH—MITIGATION OF DAMAGES—INSTRUCTIONS—REQUEST TO CHARGE.

It is the duty of a party injured by breach of contract to make every reasonable effort to minimize the damages suffered and a court must so charge upon request to do so.

6. SAME—BREACH—MITIGATION OF DAMAGES—BURDEN OF PROOF.

The burden is on a defendant, sued for damages for breach of contract, to show in mitigation of the damages claimed that the plaintiff has not used every reasonable effort within his power so to minimize his damages.

7. INSURANCE—AUTOMOBILES—REPAIRS—LOSS OF USE—EVIDENCE.

Verdict was properly directed for defendant in action against automobile insurer for damages for claimed breach of the collision and loss-of-use provisions of automobile insurance policy, where, even if breach of contract to make repairs were shown, there was no proof as to the cost of making repairs necessary to restore car to its condition prior to accident nor time reasonably necessary to effect repairs.

Appeal from Clinton; Cash (Paul R.), J. Submitted October 9, 1957. (Docket No. 25, Calendar No. 47,172.) Decided December 24, 1957.

Action by Richard W. Carter and Wayne Carter against State Farm Mutual Automobile Insurance Company, an Illinois corporation, for sums claimed due upon failure to repair collision damage properly. Directed verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

*Gregg, Glassen, Parr & Rhead* (*H. W. Glassen* and *Neil A. McLean,* of counsel), for plaintiffs.

*Jennings, Fraser, Parsons & Trebilcock* (*Everett R. Trebilcock,* of counsel), for defendant.

CARR, J.  Plaintiffs brought this action to recover damages for alleged failure to comply with the provisions of an insurance policy.  The pleadings and the proofs in the cause disclose that in December, 1955, plaintiff Wayne Carter held the certificate of title to a certain Buick automobile that had been purchased for the use of his son, the other plaintiff. Under date of December 19, 1955, defendant issued its policy of insurance on said car, both plaintiffs being referred to therein.  The following provisions of said contract are material in the instant controversy:

"Coverage G—Deductible Collision.  To pay for loss to the automobile caused by collision with another object or upset of the automobile but only for the amount of each such loss in excess of the deductible amount stated in the declarations as applicable hereto.

"Limits of Liability—Settlement Options—Coverages D, E, F and G.  The limit of liability for loss to the automobile or part thereof shall not exceed the actual cash value nor what it would then cost to repair or replace the automobile or part with like kind and quality, less depreciation and deductible amount applicable.

"The company may pay for the loss in money or may repair or replace the automobile or such part thereof as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all or such part of the automobile at the agreed value but there shall be no abandonment to the company."

On April 2, 1956, the automobile, while driven by Richard W. Carter, was involved in a collision with another vehicle, the owner of which carried insurance with defendant.  As a result plaintiffs' car was damaged, but not to the extent of being incapable of repair.  Plaintiffs desired a money settlement but

defendant company elected to have the vehicle repaired, as it had the right to do under the above-quoted provisions of the policy. An agent of the company took the car to a garage for the purpose of having the necessary work done to restore it to the condition it was in prior to the accident.

In substance, it is the claim of plaintiffs in the instant case that defendant failed to have the car properly repaired, and further failed to cause the work to be completed after having had the unsatisfactory condition of the vehicle called to its attention. It appears from the testimony of plaintiff Wayne Carter that the automobile was delivered to the garage on the 6th or 7th of April following the collision, that on one occasion, the date not being definitely fixed, Richard obtained the car from the garage and brought it home, he being told at the time to bring it back. The purpose of so obtaining it does not appear. Thereafter, apparently in May or June, Richard again went to the garage and obtained the car. Whether he was given authority to do so by defendant, or was assured by employees of the garage that the work had been completed, does not appear. It may be noted in this connection that Richard was not a witness on the trial, although the testimony indicates that he was present in court. Neither does it appear that, as on the previous occasion, he was directed to return the automobile to the garage.

On behalf of the plaintiffs it was claimed on the trial that the repairs had not been completed, and that defendant's representative was so notified and was told that the company might come and get the car at any time. Defendant did not comply with the request or direction, apparently insisting that plaintiffs should return the car to the garage that had been engaged to make the repairs. A request was also made for a list of the injuries, resulting from the

collision, that had not been remedied. Plaintiffs caused such a list to be delivered through their attorneys, but there is no proof in the case that all of the alleged defects therein mentioned resulted from the collision. The proofs do not indicate that defendant at any time refused to defray the cost of additional necessary repairs, in accordance with the terms of the policy of insurance. As a result, however, of the unfortunate situation that developed plaintiffs retained possession of the automobile, and additional repairs claimed to be necessary to restore it to the condition that it was in prior to the collision were not made.

The instant case was started by plaintiffs on September 18, 1956. Plaintiffs alleged in their declaration that at the time of the collision in which their car was damaged it was worth the sum of $2,800 and that after being partially repaired such value did not exceed the sum of $1,800. It was further averred that "the additional cost of placing said vehicle in a proper state of repair will be not less than $1,000." On the trial 2 witnesses familiar with automobile prices were called by plaintiffs, each witness expressing the opinion that before the accident the car was worth the amount claimed by plaintiffs and that thereafter, based on their examination of it subsequent to its removal the second time from the garage by Richard W. Carter, it was worth $1,800. Each witness indicated that in placing such value on the car he had taken into consideration the fact that it had been involved in an accident. Neither witness testified to the cost of making the additional repairs that plaintiffs contended were necessary in order to comply with the terms of the policy.

Plaintiffs also offered the testimony of a witness who was manager of an automobile rental service, who testified as to the charges made by his company for the rental of automobiles, the amount of the

charge being based on a certain sum per week plus 10 cents a mile, the owner furnishing gasoline and insurance coverage. No testimony was introduced as to the length of time reasonably required in order to make the repairs necessitated by the collision.

With the record in the condition indicated, plaintiffs rested, and thereupon counsel for defendant moved for a directed verdict, relying on the absence of proof as to the reasonable cost of completing the repairs to the automobile, and, also, on the failure to show the length of time reasonably necessary to complete said repairs. In opposing said motion counsel for plaintiffs took the position that the difference in value before the accident and the value at the time of the appraisal by plaintiffs' witnesses was the proper measure of damages. The trial judge disagreed with such contention and directed a verdict. Plaintiffs have appealed from the judgment entered in defendant's favor, claiming that the trial judge was in error in determining that no basis was afforded by the proof on which the jury could properly determine the amount of the damages, assuming that defendant had failed to properly observe its obligations as imposed by the contract of insurance.

Plaintiffs' claim for damages rests on the theory that defendant failed to perform its agreement to repair the automobile in accordance with the terms of the policy. We are not dealing with the liability of a tort-feasor who has by his wrongful act injured the property of another. Rather, the question at issue is asserted liability for failure to properly perform a contractual obligation. In the instant case the policy of insurance indicates the measure of liability that the parties must be presumed to have had in mind in its execution. The liability of defendant for loss to an automobile or part thereof is so limited by the contract that it "shall not exceed the actual cash value nor what it would then cost to repair or

replace the automobile or part with like kind and quality, less depreciation and deductible amount applicable." The liability of defendant must be determined in accordance with the contract, and damages for failure to observe the obligation thereby imposed must be measured accordingly.

In *Lincoln* v. *General Casualty Company of Wisconsin*, 243 Iowa 1280 (55 NW2d 321), a situation analogous to that in the case at bar was presented. Plaintiffs brought action against defendant on an insurance policy alleging the right to recover the reasonable cost and value of repairs necessary to put the car in as good a condition as it was before the collision. In sustaining a judgment in plaintiffs' favor, the charge of the trial judge was approved (p 1286), such charge being that if the jury found for plaintiffs the measure of damages would be:

" 'the fair and reasonable cost of the labor and materials necessary to repair said car and put it in as good condition as it was before the accident insofar as established by a preponderance of the evidence, less the sum of $50 deductible.

" 'In no event can the amount of plaintiffs' damages exceed the actual value of the automobile just prior to the accident.' "

The decision in the Iowa case cited is consistent with the general rule as to the measure of damages that this Court has recognized in analogous cases based on claims that defendant had failed to properly perform its contractual obligations. In *Otto Misch Co.* v. *E. E. Davis Co.*, 241 Mich 285, plaintiff sued for damages for alleged failure to properly construct a roof. The Court quoted with approval from *Drummond* v. *Hughes*, 91 NJL 563 (104 A 137), where it was held that (syllabus):

" 'Where work is done under a written contract and specifications, and some of the work is defective,

the contractor is only liable for the cost of such replacement as is necessary to make the work as good as was contemplated by the original contract and specifications.' "

In applying the rule quoted to the facts before it, it was said (p 295):

"In the instant case, the defendant contracted to build a roof that would not leak for a period of 10 years after completion. He breached his contract. There were defects in the roof which caused it to leak. The defendant was under obligation to repair the defects or to build an entirely new roof if necessary to make it conform to the requirements of his contract. If he failed to do so, the plaintiffs had the right to make the necessary repairs and charge the defendant therefor. But he was not obliged to pay for a new roof if the roof he laid could be sufficiently repaired by replacing the defective parts. He did not contract in any event to build a new roof of different design and according to different specifications. In case of breach, it was contemplated by the parties, when they entered into the contract, that the cost of making the roof comply with the plans and specifications would be the measure of plaintiffs' damages."

See, also, *Gutov v. Clark,* 190 Mich 381; *Walters & Hemming, Inc., v. Andres,* 340 Mich 628; 6, pt 1, Blashfield, Cyclopedia of Automobile Law and Practice (Perm ed), § 3791, p 466 *et seq.* It may be noted that a similar rule was applied in *State Highway Commissioner v. Predmore,* 341 Mich 639, an action for damages for negligent injuries to a bridge.

Plaintiffs in the case at bar assert the right to recover for the loss of use of the automobile on the theory that it was incapable of use at the time it was taken from the garage by Richard. No proof was offered as to the purposes for which the car was used, nor to establish that at the time in question

it was incapable of any use. Apparently it could be driven, and it further appears from the testimony of plaintiff Wayne Carter that Richard had another car. The record shows that it was taken by plaintiffs to the place where the witnesses who inspected it for purposes of appraisal made their examination.

As before noted, no testimony was introduced as to the length of time reasonably required for making the repairs necessitated by the collision. Such proof was necessary in order to permit a proper finding as to damages, assuming the right of plaintiffs to recover such. A like question was involved in *Allen* v. *Brown,* 159 Minn 61 (198 NW 137). It was there said:

"The plaintiff's auto was repaired at odd times. When one asks damages for loss of use, or for rental value, he must show the value, which includes the question of the time reasonably necessary to make the needed repairs. *W. S. Conrad Co.* v. *St. Paul City R. Co.,* 130 Minn 128 (153 NW 256). Relevant cases are collected in 4 ALR 1350–1364.

"There was no evidence of the necessary time for making the repairs. There was no evidence of rental value. There was some evidence of a contract of hire for an indefinite period, but none of the net profit which would result. There is no proper basis for the verdict. There is evidence that the auto was worth $900 before the collision and $300 afterwards. That is not the theory of the complaint nor of the submission of the case to the jury."

Based on the authority of the Minnesota decision above cited, and of cases of like nature from other States, it is said in 6, pt 1, Blashfield, Cyclopedia of Automobile Law and Practice (Perm ed), § 3418, p 63, that:

"To entitle one to an award for loss of the use of an injured automobile during the period of repair,

he must show the time reasonably necessary for making the repairs."

In stating his reasons to the jury for directing a verdict the trial judge commented on the fact that plaintiffs had not attempted to mitigate the damages claimed to have resulted from defendant's failure to properly perform its agreement. It clearly appears from the testimony of plaintiff Wayne Carter that his son took the car from the garage before the repairs were completed and that plaintiffs failed to return it. It does not appear that the car was removed at the direction, or with the permission, of defendant, although the latter had caused it to be taken to the garage for repairs. Neither does it appear that anyone connected with said garage advised Richard that the repairs had been completed. However, plaintiffs failed to return it, nor did they take it to any other garage for repairs that they claimed were necessary. The duty to mitigate damages has been repeatedly recognized by this Court. In *Rich* v. *Daily Creamery Co.*, 296 Mich 270, 282 (134 ALR 232), it was said:

"There is no question but that it is a well-established rule that in case of a breach of contract the injured party must make every reasonable effort to minimize the damages suffered and that it would be the duty of the court upon request so to charge the jury. We hold, however, under the authorities that the burden is upon the defendant to show in mitigation of the damages claimed that the plaintiff has not used every reasonable effort within his power so to minimize his damages. *Tradesman Co.* v. *Superior Manfg. Co.*, 147 Mich 702; *Flickema* v. *Henry Kraker Co.*, 252 Mich 406 (72 ALR 1046); *Milligan* v. *Haggerty*, 296 Mich 62. The same rule is applicable in tort actions as in actions for breach of contract."

It will be noted that under the rule, as above set forth, the burden of proof in a case of this nature

is on the defendant to prove the lack of reasonable efforts to mitigate, but here the facts in this connection reasonably appear from the proofs of the plaintiffs. In this respect the case may be distinguished from *Socony Vacuum Oil Co.* v. *Marvin,* 313 Mich 528. There the rule stated in the *Rich Case, supra,* was recognized, but the record indicated the absence of any proof tending to show that the damages sustained might have been mitigated by proper action on plaintiff's part.

On the basis of the record at the time plaintiffs rested their case, we conclude that the trial judge was correct in directing a verdict for defendant. The lack of proofs essential to plaintiffs' recovery resulted in a situation that afforded no proper basis for the computation of damages in the event that plaintiffs were found to have established the alleged breach of contract.

The judgment entered on the directed verdict is affirmed, with costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, KELLY, and BLACK, JJ., concurred.